Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| ORLANDO REYES ORTA<br><br>Apelante<br><br>v.<br><br>THE CONDADO PLAZA HILTON<br><br>Apelada | KLAN202500117 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Sobre:<br>Despido Injustificado (Ley Núm. 80 de 30 de mayo de 1976); Discrimen por Edad (Ley Núm. 100 de 30 de junio de 1969); Procedimiento Sumario (Ley Núm. 2 de 17 de octubre de 1961)<br><br>Caso Núm. SJ2021CV07924 |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda del Toro y el Juez Pérez Ocasio

Domínguez Irizarry, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de enero de 2026.

Comparece ante nos, la parte apelante, Orlando Reyes Orta, solicitando que dejemos sin efecto la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala de San Juan, el 1 de febrero de 2025, notificada el 3 de febrero de 2025. Mediante la misma, el foro de primera instancia declaró *Ha Lugar* una *Moción de Sentencia Sumaria* promovida por el apelado, The Condado Plaza Hilton.

Por los fundamentos que expondremos a continuación, se *confirma* la *Sentencia* apelada.

**I**

El 1 de diciembre de 2021, el apelante presentó una *Querella* por despido injustificado y discrimen por edad, bajo el procedimiento sumario de la Ley Núm. 2 de 17 de octubre de 1961, 32 LPRA sec. 3118, contra el apelado. En dicho escrito, alegó que laboró para la Corporación por veinticinco (25) años, desde el 3 de

diciembre de 1995 hasta el 4 de diciembre de 2020, fecha en la que alegadamente fue despedido injustificadamente de su puesto como Supervisor en el Departamento de Ingeniería, por su edad y no por razones de negocio. En su pliego, el apelante expuso que a raíz de la pandemia del COVID-19, la compañía les informó a los empleados que sus labores quedarían suspendidas y que regresarían una vez reanudaran las operaciones. Sin embargo, a finales de año le notificaron que estaba siendo cesanteado debido a una reorganización de la compañía, por razones económicas.

Sostuvo que luego de su despido, el apelado contrató a dos (2) empleados de menor edad y antigüedad, a quienes se les asignaron las mismas funciones y tareas que él desempeñaba. Al amparo de ello, el apelante solicitó una suma igual al doble de los salarios dejados de devengar; compensación por los daños derivados de las angustias mentales sufridas los cuales estimó en una cifra no menor de $100,000.00; más los intereses, costas y una suma razonable en conceptos de honorarios de abogado, que no fuese menor al 25% de las sumas básicas concedidas al querellante.

En respuesta, el 20 de enero de 2022, la parte apelada presentó su *Contestación a Querella*. En esencia, negó las alegaciones hechas en su contra y planteó que el despido se debió a una reorganización empresarial, por los efectos de la pandemia del COVID-19 en la industria hotelera en el año 2020, lo que conllevó la eliminación de su puesto. Asimismo, añadió que dicha situación constituía justa causa y que derrotaba cualquier reclamación por discrimen por razón de edad. Especificó, además, que individuos menores que el apelante fueron despedidos, mientras que otros empleados mayores en edad, permanecieron empleados por la empresa, incluyendo su supervisor de setenta (70) años de edad y el asistente del director de sesenta y ocho (68) años de edad. Por último, sostuvo que las personas aludidas en la demanda, que

fueron contratadas posteriormente, tenían una clasificación ocupacional distinta a la ocupada por el apelante, por lo que no tenían obligación de recontratar al apelante. Además, se especificó que este no solicitó reinstalación al puesto. Al amparo de ello, el apelado argumentó que el despido del apelante fue justificado conforme a las disposiciones de la Ley Núm. 80-1976, 29 LPRA sec. 185a-185m.

Tras varios incidentes procesales no pertinentes a la controversia ante nuestra consideración, el 21 de marzo de 2024, el apelado presentó una *Moción de Sentencia Sumaria*.[1] En el referido escrito, sostuvo que no existía controversia de hechos, en cuanto a que la terminación del empleo del apelante fue justificada. Al respecto, reiteró sus previos argumentos, afirmando que una reorganización precipitada por los efectos de la pandemia del COVID-19 en el año 2020 en la industria hotelera, conllevó la eliminación del puesto del apelante, lo que provocó su salida de la empresa. Sostuvo, además, que individuos menores que el apelante fueron despedidos, mientras que otros empleados mayores permanecieron empleados por la empresa.

A su vez, alegó que las personas contratadas con posterioridad tenían una clasificación distinta a la ocupada por el apelante, por lo que no tenían obligación de recontratarlo en dicho puesto. Plantearon, además, que la justa causa demostrada derrotaba la reclamación de discrimen. Además, reiteró que el apelante no había sido discriminado por su edad, contrario a sus

---

[1] El apelado acompañó su *Solicitud de Sentencia Sumaria* con la siguiente prueba documental: (1) Deposición del Querellante; (2) Contestaciones a Interrogatorios; (3) Descripción de Deberes-Supervisor Engineering; (4) Descripción de Deberes-Manager Engineering; (5) Deposición de Franklin Domínguez García; (6) Orden Ejecutiva 2020-020; (7) Orden Ejecutiva 2020-023; (8) Orden Ejecutiva 2020-030; (9) Orden Ejecutiva 2020-054; (10) Orden Ejecutiva 2020-057; (11) Orden Ejecutiva 2020-060; (12) Deposición de Maleny Collazo Vidot; (13) Carta de 20 de marzo de 2020; (14) Correo electrónico de 12 de junio de 2020 y su anejo (15) Carta de 2 de septiembre de 2020; (16) Contestación Suplementaria a Interrogatorios: (17) Documento con Posiciones Divididas por Criticalidad; (18) Yearly Annual Report (confidencial); (19) Correo electrónico de 4 de diciembre de 2020 y su anejo; (20) Correo electrónico de 2 de abril de 2020 y su anejo.

argumentos, y que no se podía demostrar la existencia de una causa de acción por discrimen, debido a que el apelante no tenía evidencia que demostrara la misma, dado a que no se configuraron los hechos base sobre los cuales se sostiene una presunción de discrimen. Así, tras sostener que no existía controversia alguna en cuanto a la improcedencia de las causas de acción de epígrafe, el apelado solicitó que se dictara sentencia sumaria a su favor.

Por su parte, el 22 de abril de 2024, el apelante presentó *Oposición a Moción de Sentencia Sumaria.*[2] En la misma, afirmó sus argumentos de que su despido fue injustificado y de que fue discriminado por razón de edad. Además, planteó que la moción: (1) no atendía importantes alegaciones; (2) se fundamentaba en prueba de referencia; (3) exponía teorías que no estaban avaladas por la prueba; y (4) existía controversia sobre hechos materiales. Así, sostuvo que, para adjudicar el caso, era necesario que el foro de primera instancia tuviera la oportunidad de evaluar la credibilidad de los testigos.

En riposta, el 31 de mayo de 2024, el apelado presentó una *Réplica a Oposición a Moción de Sentencia Sumaria* en la cual sostuvo los argumentos antes expuestos. Además, planteó que: (1) el apelante no logró controvertir los hechos materiales del caso; (2) incluyó fundamentación legal que no es aplicable; y (3) no demostró que la evidencia en el expediente apoyara una reclamación por discrimen por razón de edad. En virtud de lo anterior, el apelado argumentó que procedía la moción de sentencia sumaria.

---

[2] El apelante, acompañó su *Oposición a Solicitud de Sentencia Sumaria* con la siguiente prueba documental: (1) Deposición del Querellante; (2) Manual para Miembros del Equipo (Hilton);(3) Deposición de Maleny Collazo Vidot; (4) Deposición de Franklin Domínguez García; (5) Descripción de Deberes-Manager Engineering, firmado por Frankie Vélez Lebrón; (6) Descripción de Deberes-Manager Engineering, firmado por José M. Rodríguez Iglesias; (7) Descripción de Deberes - General Maintenance, firmado por Gerardo Díaz Cartagena; (8) Descripción de Deberes - General Maintenance, firmado por Mario C. Francis; (9) 2016 Performance Review of Orlando Reyes Orta; (10) Performance Review of Orlando Reyes Orta – Competency Review; (11) Performance Review Form de Orlando Reyes Orta - Job Skills; (12) 2019 Performance Review USPR Hotel Non-Exempt de Orlando Reyes Orta.

Luego de ciertos trámites procesales, el 1 de febrero de 2025, el Tribunal de Primera Instancia dictó la *Sentencia* aquí apelada, notificada el 3 de febrero de 2025. En la misma, declaró *Ha Lugar* la *Moción de Sentencia Sumaria* y expuso que el apelante no había presentado evidencia admisible que demostrara la existencia de una controversia material que debiera ser dilucidada en un juicio. En su dictamen, el foro de primera instancia también expresó que la prueba presentada por el apelante no rebatió los hechos medulares presentados por el apelado en su solicitud de sentencia sumaria, por lo que los mismos se consideraban admitidos. Así, acogió todos los hechos expuestos por el apelado y determinó que el despido del apelante fue justificado, al determinar que una reorganización empresarial puede válidamente conllevar la eliminación de puestos para reducir costos y, a la vez, la redistribución de esas funciones entre unos o varios de los empleados restantes.

En el dictamen, el juzgador especificó que las tareas de un Supervisor del Área de Ingeniería y de un Gerente de Ingeniería no son las mismas, aunque tengan funciones similares. Por consiguiente, concluyó que dicha plaza es otra clasificación ocupacional. Por lo tanto, el apelado no tenía la obligación de contactar al apelante para dicha posición. Por último, afirmó que no es el rol del tribunal entrar en lo que hubiese hecho o no en la posición del apelado, sino precisamente velar por que dicha reorganización no fuese arbitraria o caprichosa. A tenor con sus determinaciones, el foro de primera instancia concluyó que el despido del apelante fue justificado y legal. Por lo cual procedió a declarar *Ha Lugar* la *Moción de Sentencia Sumaria* del apelado y desestimó con perjuicio la *Querella* incoada por el apelante.

Inconforme, el 13 de febrero de 2025, el apelante compareció ante nos mediante el presente recurso de *Apelación*. En el mismo formuló los siguientes planteamientos de error:

Declarar ha lugar la moción de sentencia sumaria presentada por la apelada y dictar sentencia sumariamente en la que se desestimó todas las reclamaciones del apelante, a pesar de existir controversias de hechos esenciales respecto a la justificación del despido al apelante y al ánimo discriminatorio de dicho despido.

Declarar ha lugar la moción de sentencia sumaria presentada por la apelada y dictar sentencia sumariamente en la que se desestimó todas las reclamaciones del apelante, a pesar de existir controversias de hechos esenciales de la sentencia son improcedentes en derecho por constituir prueba de referencia inadmisible.

Al justificar las actuaciones de la apelada que condujeron al despido injustificado y discriminatorio del apelante aduciendo que constituían una *gestión legítima de negocio,* desconociendo por completo que dichas actuaciones fueron contrarias al artículo 3 de la Ley 80-1976 y la jurisprudencia que preceptúan como injustificado y discriminatorio un despido que se realiza en tales circunstancias.

El 17 de marzo de 2025, el apelado presentó su *Alegato en Oposición a Apelación,* en el cual reiteró sus argumentos en cuanto a la procedencia de la sentencia sumaria.

Luego de examinar el expediente de autos y con el beneficio de la comparecencia de ambas partes de epígrafe, procedemos a expresarnos.

## II

### A

Por su parte, la Ley Núm. 80 de 30 de mayo de 1976, conocida como la *Ley Sobre Despidos Injustificados,* según enmendada, 29 LPRA sec. 185 *et seq.,* fue aprobada con el propósito de proteger el derecho de los trabajadores y desalentar los despidos injustificados. Este estatuto provee un remedio de compensación económica a empleados cuando sus patronos actúen en contravención a sus disposiciones. 29 LPRA sec. 185a. Conforme a esta ley, todo empleado que haya sido contratado por un periodo de tiempo indeterminado, mediante remuneración, que sea despedido sin que haya mediado una justa causa, tendrá derecho a recibir de su

patrono una indemnización. 29 LPRA sec. 185a; *Méndez Ruiz v. Techno Plastics*, 2025 TSPR 68, 216 DPR __ (2025); *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 775 (2022).

Con la aprobación de la Ley Núm. 4 de 26 de enero de 2017, *Ley de Transformación y Flexibilidad Laboral*, 2017, la Ley Núm. 80, *supra*, sufrió una serie de enmiendas, entre estas "se eliminó de la ley la frase que le imponía el peso de la prueba al patrono en los casos de [Ley Núm. 80]" *Ortiz Ortiz v. Medtronic*, supra, pág. 776 citando a E. García García, *El legado e implicaciones de la reforma laboral de 2017*, 86 Rev. Jur. UPR 1087, 1156 (2017). Debemos enfatizar que, la Ley Núm. 80, *supra*, no proscribe la acción de despido, si no que le impone al patrono un elemento disuasivo para no despedir al trabajador sin que medie justa causa. Luis H. Sánchez Caso, *Reflexiones Sobre La Responsabilidad Civil de los Oficiales y Gerenciales en Reclamaciones de Despido o Discrimen*, 34 Rev. Jur. U.I.P.R. 183, 210-211 (2000). Por lo que, si existe justa causa, el empleado puede ser despedido sin penalidad para el patrono. *Santiago v. Kodak Caribbean, Ltd.*, 129 DPR 763, 775 (1992). En cuanto al concepto de justa causa, este es uno dinámico que dependerá de la relación particular del trabajo y de las circunstancias que rodean el evento motivador del despido. *Srio. del Trabajo v. G.P. Inds., Inc.*, 153 DPR 223, 243 (2021).

En cuanto a que se entenderá como justa causa, el Artículo 2 de la Ley Núm. 85-1976, 29 LPRA sec. 185b, establece:

> Se entenderá por justa causa para el despido de un empleado aquella que no esté motivada por razones legalmente prohibidas y que no sea producto del mero capricho del patrono. Además, se entenderá por justa causa aquellas razones que afecten el buen y normal funcionamiento de un establecimiento que incluyen, entre otras, las siguientes:
>
> (a) Que el empleado incurra en un patrón de conducta impropia o desordenada.
>
> (b) Que el empleado incurra en un patrón de desempeño deficiente, ineficiente, insatisfactorio, pobre, tardío o

negligente. Esto incluye incumplir con normas y estándares de calidad y seguridad del patrono, baja productividad, falta de competencia o habilidad para realizar el trabajo a niveles razonables requeridos por el patrono y quejas repetidas de los clientes del patrono.

(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.

(d) Cierre total, temporero o parcial de las operaciones del establecimiento. En aquellos casos en que el patrono posea más de una oficina, fábrica, sucursal o planta, el cierre total, temporero o parcial de las operaciones de cualquiera de estos establecimientos donde labora el empleado despedido, constituirá justa causa para el despido a tenor con este Artículo.

(e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.

(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido o con el propósito de aumentar la competitividad o productividad del establecimiento

29 LPRA sec. 185b.

Una vez despedido un empleado por razones económicas o empresariales, según provisto en el referido Artículo 2 de la Ley Núm. 85-1976, *supra*, nuestro Tribunal Supremo ha expresado que:

[E]l hecho de que sus funciones se le asignen a otros empleados no equivale a una sustitución en el empleo. Una reorganización empresarial forjada como vehículo para impulsar económicamente un negocio y sacarlo de la situación precaria en la que se encuentra puede válidamente conllevar la eliminación de puestos para reducir costos y a la vez la redistribución de esas funciones entre uno o varios de los empleados restantes. *SLG Zapata Rivera v. JF Montalvo*, 189 DPR 414, 446 esc. 12 (2013).

A su vez, en lo pertinente a este caso, el Tribunal Supremo de Puerto Rico en *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964, 1002-1003 (2022), estableció que:

[La] obligación que impone la Ley Núm. 80, supra, de probar efectivamente el proceso de reestructuración, no está sujeta a que se acredite la existencia de un proceso o plan de reestructuración de una forma **particular o específica.** O sea, basta con que el patrono demuestre que la acción respondió a una decisión gerencial válida

a la luz de las circunstancias y que no obedeció a un mero capricho o arbitrariedad, y así, tendrá que acreditarlo. Ello, pues el patrono tiene derecho a hacer los arreglos o cambios que estime necesarios y convenientes para optimizar sus recursos y aumentar las ganancias de la empresa. Por cuanto, el juzgador de los hechos puede otorgarle valor probatorio a las declaraciones juradas presentadas, como a los testimonios vertidos mediante deposiciones y la prueba documental que las partes acompañan al someter una moción de sentencia sumaria si estos cumplen con los requisitos establecidos en la Regla 36.5 de Procedimiento Civil, supra. Ello, pues este tipo de evidencia puede contener hechos que **podrían ser admisibles como prueba, si se basan en conocimiento personal de los declarantes en cuanto a su contenido** en relación con la reorganización empresarial. (Énfasis suplido).

Ahora bien, el Artículo 3 de la Ley 80, 29 LPRA sec. 185c, dispone que si dentro de los seis meses siguientes al despido de un empleado por las razones contempladas en los incisos (d), (e) y (f) del antedicho Artículo 2 de la Ley Núm. 80, *supra*, surge la necesidad de emplear nuevamente a una persona en labores iguales o similares a las que desempeñaban dichos empleados al momento de su despido y dentro de su clasificación ocupacional, dicha contratación debe realizarse siguiendo el orden de antigüedad correspondiente. Asimismo, la Ley reconoce que, al momento de la nueva contratación, cuando exista una diferencia razonablemente clara o evidente a favor de la capacidad, productividad, desempeño, competencia, eficiencia o historial de conducta entre los empleados comparados, el patrono podrá seleccionar a base de dichos criterios.

Por su parte, la Guía Revisada para la Interpretación y Aplicación de la Ley Núm. 80, 30 de junio de 2014, Departamento del Trabajo ("Guía Revisada de 2014"), complementa las disposiciones estatutarias anteriores. Guía Revisada de 2014, págs. 52-53. La Guía Revisada de 2014 reconoce que la "retención o el reempleo preferente basado en antigüedad debe hacerse dentro de la misma clasificación ocupacional y no entre clasificaciones

ocupacionales diferentes". *SLG Zapata-Rivera v. JF Montalvo*, supra, págs. 427-428.

**B**

La Asamblea Legislativa aprobó la Ley Núm. 100 de 30 de junio de 1959, conocida como la *Ley Contra el Discrimen en el Empleo*, 29 LPRA sec. 146 *et seq.*, para ofrecer una protección eficaz a los trabajadores contra diversos tipos de discrimen en el ámbito laboral. *Ruiz Mattei v. Commercial Equipment*, 214 DPR 407, 423 (2024); *Mestres Dosal v. Dosal Escandón*, 173 DPR 62, 68 (2008). Con su aprobación, los empleados recibieron una protección contra despidos por razón de edad, raza, color, sexo, origen social o nacional, condición social, afiliación política, ideas políticas o religiosas, o por ser víctima de violencia doméstica, agresión sexual o acecho. *Mestres Dosal v. Dosal Escandón*, supra, págs. 68-69.

Cabe señalar que, en su origen, la Ley Núm. 100, *supra*, establecía una presunción controvertible a favor del empleado de que el despido había sido discriminatorio, salvo que el patrono demostrara la existencia de justa causa para el despido. *Segarra Rivera v. Int'l. Shipping et al.*, supra, pág. 988. Sin embargo, con la la Ley de Transformación y Flexibilidad Laboral, *supra*, se eliminó la disposición de presunción anterior y se estableció la norma del caso *prima facie* de discrimen conforme al estándar probatorio establecido en *McDonnell Douglas Corp. v. Green*, 411 US 792 (1973). Bajo tal esquema, el empleado deberá probar: (1) que pertenece a una clase protegida por la legislación; (2) que está cualificado para el puesto; (3) que fue objeto de una acción adversa; y (4) que se benefició otra persona que no pertenece al mismo grupo protegido. *Segarra Rivera v. Int'l. Shipping et al.*, supra, págs. 989-990; *McDonnell Douglas Corp. v. Green*, supra, pág. 802; *Guías para la Interpretación de la Legislación Laboral de Puerto Rico*,

Departamento del Trabajo y Recursos Humanos, 1ra. Ed., 8 de mayo de 2019, págs. 157-158.

Una vez el empleado haya establecido el caso *prima facie*, le corresponderá al patrono demostrar que posee una explicación razonable que justifique sus acciones y que no se trata de un acto discriminatorio. *McDonnell Douglas Corp. v. Green*, supra. En estos casos, el patrono podrá: (1) presentar prueba que derrote el hecho básico de que el despido fue uno injustificado; (2) destruir el hecho presumido, que el despido fue discriminatorio, o (3) presentar prueba para destruir el hecho básico y el presumido a la vez. *Segarra Rivera v. Int'l. Shipping et al.*, supra, pág. 989.

## c

En nuestro ordenamiento, la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, regula todo lo concerniente al mecanismo de sentencia sumaria. Su fin es favorecer la más pronta y justa solución de un pleito que carece de controversias genuinas sobre los hechos materiales y esenciales de la causa que trate. *Negrón Castro v. Soler Bernardini, et als*, 2025 TSPR 96, 216 DPR __ (2025); *BPPR v. Cable Media*, 2025 TSPR 1, 215 DPR __ (2025); *Cruz, López v. Casa Bella y otros*, 213 DPR 980, 993 (2024); *Oriental Bank v. Caballero García*, 212 DPR 671, 678 (2023); *Segarra Rivera v. Int'l Shipping et al.*, supra, pág. 979. Un hecho material es "aquel que puede alterar el resultado de la reclamación de acuerdo con el derecho aplicable". *Oriental Bank v. Caballero García*, supra, pág. 679; *Segarra Rivera v. Int'l Shipping et al.*, supra, pág. 980. De este modo, y debido a la ausencia de criterios que indiquen la existencia de una disputa real en el asunto, el juzgador de hechos puede disponer del mismo sin la necesidad de celebrar un juicio en su fondo. *Universal Ins. y otro v. ELA y Otros*, 211 DPR 455, 457 (2023).

La parte promovente de una solicitud de sentencia sumaria está obligada a establecer mediante prueba admisible en evidencia

la inexistencia de una controversia real respecto a los hechos materiales y esenciales de la acción. *BPPR v. Cable Media*, supra. Además, deberá demostrar que, a la luz del derecho sustantivo, amerita que se dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación. *Íd.*; *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Ramos Pérez v. Univisión*, 178 DPR 200, 218 (2010); *Vera v. Dr. Bravo*, 161 DPR 308, 333 (2004). Para que tal sea el resultado, viene llamado a desglosar en párrafos numerados los hechos respecto a los cuales aduce que no existe disputa alguna. Una vez expuestos, debe especificar la página o párrafo de la declaración jurada u otra prueba admisible que sirven de apoyo a su contención. 32 LPRA Ap. V, R. 36.3(a)(4); *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 677 (2018); *SLG Zapata-Rivera v. J.F. Montalvo*, supra, págs. 432-433.

Para derrotar una moción de sentencia sumaria, la parte que se opone a la misma viene llamada a presentar declaraciones juradas o documentos que controviertan las alegaciones pertinentes. 32 LPRA Ap. V, R. 36.5. Por ello, tiene la obligación de exponer de forma detallada aquellos hechos relacionados al asunto que evidencien la existencia de una controversia real que deba ventilarse en un juicio plenario. *BPPR v. Cable Media*, supra. En esta tarea, tiene el deber de citar específicamente los párrafos, según enumerados por el promovente, sobre los cuales estima que existe una genuina controversia y, para cada uno de los que pretende controvertir, detallar de manera precisa la evidencia que sostiene su impugnación. Regla 36.3(b)(2) de Procedimiento Civil, *supra*; *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 433.

Cuando de las propias alegaciones, admisiones o declaraciones juradas surge una controversia *bona fide* de hechos, la moción de sentencia sumaria resulta ser improcedente. Ante ello, el tribunal competente debe abstenerse de dictar sentencia sumaria

en el caso y cualquier duda en su ánimo lo debe llevar a resolver en contra de dicha solicitud. *Vera v. Dr. Bravo,* supra, págs. 333-334; *Mgmt. Adm. Servs., Corp. v. ELA,* 152 DPR 599, 611 (2000). Al evaluar la solicitud de sentencia sumaria, el tribunal debe cerciorarse de la total inexistencia de una genuina controversia de hechos. *Rodríguez García v. UCA,* supra, pág. 941; *Roig Com. Bank v. Rosario Cirino,* 126 DPR 613, 618 (1990). Lo anterior responde a que todo litigante tiene derecho a un juicio en su fondo cuando existe la más mínima duda sobre la certeza de los hechos materiales y esenciales de la reclamación que se atienda. *Sucn. Maldonado v. Sucn. Maldonado,* 166 DPR 154, 185 (2005). Por ese motivo, previo a utilizar dicho mecanismo, el tribunal deberá analizar los documentos que acompañan la correspondiente solicitud junto con aquellos sometidos por la parte que se opone a la misma y los otros documentos que obren en el expediente del tribunal. Iguales criterios debe considerar un tribunal apelativo al ejercer su función revisora respecto a la evaluación de un dictamen del Tribunal de Primera Instancia emitido sumariamente. *Segarra Rivera v. Int'l Shipping et al.,* supra, págs. 981-982; *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 114 (2015); *Vera v. Dr. Bravo,* supra, pág. 334.

En *Meléndez González et al. v. M. Cuebas,* supra, págs. 118-119, el Tribunal Supremo de Puerto Rico estableció el estándar específico a emplearse por este foro apelativo intermedio al revisar las determinaciones del foro primario con relación a los dictámenes de sentencias sumarias. A tal fin, se expresó como sigue:

> **Primero**, reafirmamos lo que establecimos en *Vera v. Dr. Bravo,* supra, a saber: el Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar Solicitudes de Sentencia Sumaria. En ese sentido, está regido por la Regla 36 de Procedimiento Civil, *supra,* y aplicará los mismos criterios que esa regla y la jurisprudencia le exigen al foro primario. Obviamente, el foro apelativo intermedio estará limitado en el sentido de que no

puede tomar en consideración evidencia que las partes no presentaron ante el Tribunal de Primera Instancia y no puede adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario luego de celebrado un juicio en su fondo. La revisión del Tribunal de Apelaciones es una *de novo* y debe examinar el expediente de la manera más favorable a favor de la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor.

**Segundo**, por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra,* y discutidos en *SLG Zapata-Rivera v. JF Montalvo,* supra.

**Tercero**, en el caso de revisión de una Sentencia dictada sumariamente, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos. Esta determinación puede hacerse en la Sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.

**Cuarto**, y, por último, de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.

## D

De otro lado, en materia de derecho probatorio, según la Regla 801(c) de Evidencia, 32 LPRA Ap. VI, R. 801(c), es prueba de referencia toda declaración que no sea la que un declarante proponga en el juicio o vista de la que trate y que se ofrece con el propósito de probar la verdad de lo aseverado. 32 LPRA Ap. VI, R. 801(c). Como norma, y salvo que otra cosa se disponga por ley, la prueba de referencia es inadmisible en evidencia. 32 LPRA Ap. VI, R. 804. Ahora bien, la doctrina antes expuesta no es absoluta. En lo pertinente, la Regla 805 de Evidencia, 32 LPRA Ap. VI, R. 805, permite la admisibilidad de cierta prueba de referencia, aun cuando el declarante esté disponible como testigo, si median determinadas

circunstancias que le arroguen suficientes garantías de confiabilidad. Específicamente, la Regla 805(f), respecto a los *Récords de actividades que se realizan con regularidad*, dispone como sigue:

> Un escrito, informe, récord, memorando o compilación de datos -en cualquier forma- relativo a actos, sucesos, condiciones, opiniones o diagnósticos que se hayan preparado en o cerca del momento en que éstos sugirieron, por una persona que tiene conocimiento de dichos asuntos, o mediante información transmitida por ésta si dichos récords se efectuaron en el curso de una actividad de negocios realizada con regularidad, y si la preparación de dicho escrito, informe récord, memorando o compilación de datos se hizo en el curso regular de dicha actividad de negocio, según lo demuestre el testimonio de su custodio o de alguna otra persona testigo cualificada, o según se demuestre mediante una certificación que cumpla con las disposiciones de la Regla 902(k) de este apéndice o con algún estatuto que permita dicha certificación, a menos que la fuente de información, el método o las circunstancias de su preparación, inspiren falta de confiabilidad. El término "negocio", según se utiliza en este inciso, incluye, además de negocio propiamente, una actividad gubernamental y todo tipo de institución, asociación, profesión, ocupación y vocación, con o sin fines de lucro.

32 LPRA Ap. VI, R. 805(f).

La parte promovente que proponga someter un récord como evidencia bajo el referido inciso de la Regla 805(f) de las de Evidencia, supra, debe presentar el testimonio de su custodio o de alguna otra persona testigo cualificada, o una certificación que cumpla con las disposiciones de la Regla 902(k) de Evidencia, 32 Ap. VI, R. 902(k), o con algún estatuto que permita dicha certificación, a menos que la fuente de información, el método o las circunstancias de su preparación inspiren falta de confiabilidad. si se acompaña de una declaración jurada de la persona a cargo de su custodia o de alguna otra persona cualificada, que certifique que dicho récord: (1) se preparó en o cerca del momento en que ocurrieron los sucesos o las actividades mencionadas por una persona que tiene conocimiento de dichos asuntos, o mediante información transmitida por ésta; (2) se llevó a cabo en el curso de la actividad

realizada con regularidad, y (3) se preparó como una práctica regular de dicha actividad. La parte que se proponga someter un récord como evidencia, conforme a lo dispuesto en este inciso, tendrá que notificar por escrito su intención a todas las partes contrarias. Además, deberá tener el récord y la declaración jurada disponibles para inspección con suficiente antelación a su presentación como evidencia a fin de brindar a la parte contraria una oportunidad justa para refutarlos. *H.R. Stationery, Inc. v. ELA,* 119 DPR 129, 136 (1987).

### III

En su recurso, la parte apelante plantea, en esencia, que erró el Tribunal de Primera Instancia al dictar sentencia sumaria en el caso de epígrafe. En específico, aduce, primero, que subsisten controversias de hechos materiales en torno a la justificación del despido y al alegado ánimo discriminatorio que impiden la adjudicación sumaria del pleito. Segundo, plantea que la sentencia recurrida se apoya en evidencia inadmisible por constituir prueba de referencia, por lo que resulta improcedente en derecho. Por último, argumenta que el Tribunal de Primera Instancia valida indebidamente las actuaciones de la parte apelada como una gestión legítima de negocio, en contravención del Artículo 3 de la Ley 80-1976 y de la jurisprudencia aplicable.

En principio, conforme esbozáramos, el estado de derecho reconoce que, al examinar un dictamen emitido por el Foro primario en cuanto a una solicitud de sentencia sumaria, el Tribunal de Apelaciones se encuentra en igual condición que el Tribunal de Primera Instancia para entender sobre sus méritos. A tales fines, el ejercicio de nuestras facultades constituye una revisión *de novo,* que nos sujeta a los términos y exigencias de la Regla 36 de Procedimiento Civil, *supra,* y nos permite considerar la evidencia documental que acompaña la moción dispositiva pertinente, así

como el escrito presentado en oposición. Por consiguiente, nos corresponde determinar si la *Moción de Sentencia Sumaria* presentada por la apelada y la *Oposición a Moción de Sentencia Sumaria* presentada por el apelante cumplen con los requisitos establecidos en la Regla 36 de Procedimiento Civil, *supra.*

Al examinar la *Moción de Sentencia Sumaria* presentada por la parte apelada, surge que esta desglosa en párrafos separados los hechos que estima incontrovertidos y relaciona, mediante referencias específicas, la prueba documental que sostiene su postura. De igual modo, al evaluar la *Oposición a Moción de Sentencia Sumaria* presentada por el apelante, se desprende que este identifica los hechos que entiende controvertidos y señala la evidencia que, a su juicio, los sustenta. Así las cosas, concluimos que ambos escritos cumplen con las exigencias formales dispuestas en la Regla 36 de Procedimiento Civil, *supra*, por lo que procede atender los méritos de los señalamientos de error formulados.

En cuanto a los méritos de la solicitud de sentencia sumaria, concluimos que el pronunciamiento que atendemos es conforme a derecho y a la prueba presentada. Hemos ejercido nuestras funciones revisoras y determinamos que, de los documentos presentados, no surge controversia alguna de hechos medulares que amerite dirimir el presente asunto mediante el cauce ordinario de adjudicación. De igual forma, entendemos que la sentencia apelada corresponde a una adecuada interpretación y aplicación del derecho pertinente a la materia que atendemos. Nos explicamos.

Por estar íntimamente relacionados, discutiremos en conjunto, al igual que el apelante, los primeros dos señalamientos de error.

Según esbozáramos previamente, la Ley Núm. 80 de 30 de mayo de 1976, *supra*, no proscribe la acción de despido, sino que impone un elemento disuasivo para evitar que el patrono despida al

empleado sin que medie justa causa. Por consiguiente, cuando existe justa causa, el patrono puede despedir al empleado sin incurrir en responsabilidad indemnizatoria. El concepto de justa causa es uno dinámico y depende de la relación particular de trabajo y de las circunstancias que rodean el evento que motiva el despido. En lo pertinente, el Artículo 2 de la Ley Núm. 80-1976, 29 LPRA sec. 185b, dispone que se entenderá por justa causa aquella que no esté motivada por razones legalmente prohibidas ni sea producto del mero capricho del patrono. Además, establece que constituyen justa causa aquellas razones que afectan el buen y normal funcionamiento del establecimiento, entre ellas, los cambios tecnológicos o de reorganización, así como las reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias. A su vez, según esbozado anteriormente, **nuestro Tribunal Supremo ha aclarado que la obligación del patrono de probar efectivamente un proceso de reestructuración no está sujeta a que se acredite la existencia de un proceso o plan de reorganización bajo una forma particular o específica, sino que basta con que demuestre que la acción respondió a una decisión gerencial válida a la luz de las circunstancias y que no obedeció a un mero capricho o arbitrariedad.** En ese marco, al resolver una moción de sentencia sumaria, el juzgador de los hechos puede considerar declaraciones juradas, testimonios vertidos mediante deposiciones y prueba documental acompañada, siempre que dicha evidencia cumpla con los requisitos de la Regla 36.5 de Procedimiento Civil, *supra*, y contenga hechos que podrían ser admisibles como prueba, en la medida en que se basen en el conocimiento personal de los declarantes en cuanto a su contenido relacionado con la reorganización empresarial.

Por otro lado, según fue expuesto anteriormente, la Regla 804 de la Ley de Evidencia, 32 LPRA Ap. VI, R. 804, establece que la prueba de referencia es inadmisible, salvo en las excepciones expresamente dispuestas por la ley. La Regla 805 de la Ley de Evidencia, 32 LPRA Ap. VI, R. 805, introduce una excepción a esta regla general, permitiendo la admisión de ciertos documentos como prueba, incluso si el declarante está disponible para testificar, siempre que se cumplan determinadas condiciones que garanticen la confiabilidad de la evidencia. En particular, la Regla 805(f) establece que los registros de actividades realizadas regularmente, como los documentos generados en el curso normal de los negocios, pueden ser admitidos como prueba. Siempre que hayan sido preparados en el curso de dicha actividad comercial y su autenticidad pueda ser verificada mediante el testimonio del custodio del registro o mediante una certificación correspondiente.

En el caso ante nuestra consideración, del expediente surge que la parte apelada comunicó al apelante que la razón de su cesantía respondió a un proceso de reorganización operacional, provocado por los efectos adversos que la pandemia del COVID-19 y las Órdenes Ejecutivas emitidas al respecto, tuvieron sobre la industria hotelera. La prueba documental y testimonial ante nuestra consideración refleja que, ante la reducción sostenida en los niveles de ocupación y las limitaciones impuestas a la operación del establecimiento, personal gerencial de alto nivel llevó a cabo un análisis interno, en el que participaron la Directora de Recursos Humanos, la Directora de Finanzas y la Gerente General, con el propósito de evaluar de forma integral las necesidades operacionales del establecimiento y la viabilidad de determinadas posiciones.

Como resultado de ese análisis, se determinó que la posición ocupada por el apelante resultaba necesaria únicamente cuando el Hotel alcanzaba un nivel de ocupación igual o superior al cincuenta

por ciento (50%), umbral que no se alcanzó durante el periodo pertinente. Por ello, la posición fue incluida dentro del proceso de reorganización y su eliminación respondió a criterios operacionales objetivos, lo que incluyó la cesantía de empleados de distintas edades y antigüedad en la empresa. A la luz de estos hechos, no se desprende que el despido haya estado motivado por razones legalmente prohibidas ni que haya sido producto del mero capricho del patrono, sino que respondió a una decisión gerencial, directamente relacionada con funcionamiento del establecimiento ante las condiciones operacionales imperantes en ese momento. Por consiguiente, no advertimos que, al atender este primer señalamiento, se haya incurrido en error.

En cuanto al señalamiento de error relativo a la alegada inadmisibilidad del documento intitulado *Documento con Posiciones Divididas por Criticalidad*, del expediente surge que este no fue considerado como un plan formal de reorganización. Más bien, se trató de una herramienta interna utilizada por la gerencia como parte del proceso evaluativo dirigido a examinar la necesidad operacional de determinadas posiciones ante la situación que enfrentaba el hotel.

La prueba presentada refleja que la Directora de Recursos Humanos, la señora Maleny Collazo Vidot, declaró sobre dicho instrumento, explicó su contenido y precisó el propósito para el cual fue empleado, a saber, evaluar qué posiciones resultaban necesarias y cuáles podían ser cesanteadas a la luz de la realidad operacional existente en ese momento. La señora Collazo Vidot manifestó tener conocimiento personal sobre su preparación y utilización, y dicho testimonio estuvo sujeto al contrainterrogatorio por parte del apelante, quien además tenía el referido documento en su poder. Así, no se utilizó para probar hechos ajenos al conocimiento de quienes participaron del proceso, sino como manifestación del

análisis gerencial realizado por personal con conocimiento directo de las operaciones del establecimiento. En ese contexto, no se desprende que la determinación recurrida se haya sustentado en prueba de referencia inadmisible.

Por último, en su tercer señalamiento de error, el apelante plantea que las actuaciones de la parte apelada, que condujeron a su despido, fueron contrarias al Artículo 3 de la Ley Núm. 80-1976, 29 LPRA sec. 185c, al no haber sido retenido ni posteriormente recontratado, lo que, a su juicio, tornó el despido injustificado y discriminatorio. En esencia, sostiene que la parte apelada debía haberle ofrecido una posición distinta, de mayor jerarquía y con una clasificación ocupacional diferente, meses después de su cesantía.

Según esbozáramos previamente, el Artículo 3 de la Ley 80, 29 LPRA sec. 185c, dispone que si dentro de los seis meses siguientes al despido de un empleado por las razones contempladas en los incisos (d), (e) y (f) del antedicho Artículo 2 de la Ley Núm. 80, *supra*, surge la necesidad de emplear nuevamente a una persona en labores iguales o similares a las que desempeñaban dichos empleados al momento de su despido y dentro de su clasificación ocupacional, dicha contratación debe realizarse siguiendo el orden de antigüedad correspondiente. Asimismo, la Ley reconoce que, al momento de la nueva contratación, cuando exista una diferencia razonablemente clara o evidente a favor de la capacidad, productividad, desempeño, competencia, eficiencia o historial de conducta entre los empleados comparados, el patrono podrá seleccionar a base de dichos criterios. Además, nuestro Tribunal Supremo, ha reconocido que una reorganización empresarial motivada por razones operacionales puede válidamente conllevar la eliminación de puestos y la redistribución de funciones entre uno o varios empleados.

En el caso ante nuestra consideración, se desprende que el apelante ocupaba la posición de Supervisor en el Departamento de Ingeniería. Según surge, la referida posición fue eliminada en su totalidad como parte del proceso de reorganización. Además, las funciones asociadas a dicha plaza fueron redistribuidas entre posiciones gerenciales de clasificación ocupacional distinta. Del mismo modo, se desprende que, transcurridos más de seis (6) meses desde el despido, no se reabrió ni se volvió a reclutar la posición de Supervisor que ocupaba el apelante, por lo que no se configuró el supuesto de reposición contemplado en el Artículo 3 de la Ley Núm. 80-1976, 29 LPRA sec. 185c.

Aclaramos que las contrataciones del señor Frankie Vélez Lebrón y del señor José Rodríguez Iglesias fueron para ejercer la posición de Gerente en el Departamento de Ingeniería. Del examen de los documentos que obran en autos se desprende que la plaza de Gerente no es equivalente, en términos de clasificación ocupacional, a la plaza de Supervisor, pues difieren en sus funciones, niveles de responsabilidad, forma de compensación y clasificación bajo las leyes de horas y salarios. En particular, surge que para la posición de Gerente se prefería la posesión de un grado de bachillerato, requisito que no aplicaba a la plaza de Supervisor. Del expediente surge que el señor Vélez Lebrón y el señor Rodríguez Iglesias contaban con grados en ingeniería al momento de su contratación, a diferencia del apelante, quien no poseía ni el grado de bachillerato. Es más, del propio testimonio del apelante se desprende que las funciones que desempeñaba como Supervisor no eran las mismas que las correspondientes a la posición de Gerente ni realizaba tareas propias de dicha plaza.

A la luz de estas circunstancias, no puede sostenerse que ambas posiciones pertenecieran a la misma clasificación ocupacional ni que fueran equivalentes a los fines del Artículo 3 de

la Ley Núm. 80, *supra*. En consecuencia, no advertimos que, al atender este planteamiento, se haya incurrido en error.

En conclusión, del expediente que nos ocupa podemos constatar que las determinaciones realizadas por el Tribunal de Primera Instancia están respaldadas en los documentos presentados. La *Sentencia* apelada interpreta y aplica de manera correcta la normativa vigente en nuestro estado de derecho, a la luz de la prueba que fue presentada ante el foro de primera instancia. De este modo, por no haber controvertido los hechos establecidos por los apelados, resolvemos que no existe controversia de hechos alguna sobre la corrección del dictamen apelado.

## IV

Por los fundamentos antes expuestos, se *confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones. El Juez Ronda del Toro disiente con opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| ORLANDO REYES ORTA Apelante v. THE CONDADO PLAZA HILTON Apelada | KLAN202500117 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de San Juan Caso Núm.: SJ2021CV07924 Sobre: Despido Injustificado (Ley Núm. 80 de 30 de mayo de 1976); Discrimen por Edad (Ley Núm. 100 de 30 de junio de 1969); Procedimiento Sumario (Ley Núm. 2 de 17 de octubre de 1961) |
|---|---|---|

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda Del Toro y el Juez Pérez Ocasio

## VOTO DISIDENTE DEL JUEZ RONDA DEL TORO

En San Juan, Puerto Rico, a 20 de enero de 2026.

En la sentencia apelada, el Tribunal de Primera Instancia, Sala de San Juan (TPI) declaró Ha lugar, vía solicitud de sentencia sumaria presentada por la parte demandada en TPI, aquí apelada, y desestimó la demanda que reclamaba despido injustificado y discrimen por edad. Respetuosamente discrepo de la posición de la mayoría del panel que confirma la desestimación sumaria pese a las múltiples controversias en los hechos necesarios para atender todos los reclamos realizados en este caso. Esos hechos en controversia no permiten resolver por la vía sumaria la demanda que aquí se presentó.

A continuación, los fundamentos para mi disenso.

Las leyes laborales deben ser interpretadas liberalmente, pues le conceden al trabajador la mayor protección de los

derechos que el legislador estatuyó. *S.L.G. Rivera Carrasquillo v. A.A.A.*, 177 D.P.R. 345 (2009).

En reconocimiento de la dificultad de probar un caso de discrimen por prueba directa, la jurisprudencia federal adoptó y ha popularizado el uso del concepto caso *prima facie* como prueba circunstancial que permite probar la existencia de discrimen intencional. El ordenamiento legal estatal también ha adaptado este concepto u orden procesal a los distintos estatutos laborales.

La Ley Núm. 100 de 30 de junio de 1959 que prohíbe el discrimen en el empleo por diversas modalidades, siendo edad una de ellas, contiene una presunción que, unida al concepto caso *prima facie*, establece un esquema procesal que el Tribunal Supremo ha descrito como sigue:

> "1. El empleado deberá presentar prueba, primero, de que hubo un despido o acto perjudicial: segundo, que la acción se realizó sin justa causa, y tercero, algún hecho que lo ubique dentro de la modalidad de discrimen según la cual reclama. Una vez el empleado cumple con esta primera etapa procesal, surge la presunción de discrimen del Art. 3 sin que tenga que probar el acto discriminatorio directamente. En esta etapa, el peso de la prueba cambia y recae sobre el patrono. Si el patrono no presenta prueba suficiente para rebatir la presunción, se entenderá que el empleado ha probado su caso...
>
> 2. Sin embargo, para defenderse y así rebatir esta presunción, el patrono tiene varias alternativas. Éste puede presentar prueba que derrote el hecho básico: esto es, que el despido fue justificado o destruir el hecho presumido (que el despido no fue discriminatorio) o presentar prueba para atacar ambos hechos...
> 3. Una vez el patrono rebate la presunción de discrimen, y sólo en este caso, el trabajador debe continuar su caso sin el beneficio probatorio de la presunción; esto es, presentar evidencia concreta que pruebe que realmente hubo discrimen." <u>Ramírez Ferrer</u> v. <u>Conagra Foods</u>, 175 D.P.R. 799, 815 (2009). Ver, además, <u>Ramos Pérez</u> v. <u>Univisión</u>, 178 D.P.R. 200 (2010).

Los hechos pertinentes a la causa de acción de discrimen están en controversia. Ello no permite la Sentencia Sumaria aquí

dictada y que se confirma con el aval de los jueces que componen este panel. Al evaluar los documentos sometidos por las partes en sus respectivas *Moción Solicitando Sentencia Sumaria* y la *Oposición a Sentencia Sumaria*, lo correcto es determinar los múltiples hechos que están en controversia y dejar sin efecto la Sentencia Sumaria dictada.

Veamos un resumen de la reclamación desestimada por Sentencia Sumaria.

El apelante trabajó para la apelada por un espacio de veinticinco (25) años, desde el 3 de diciembre de 1995 hasta el 4 de diciembre de 2020, fecha en que fue despedido.[1]

El apelante comenzó como empleado regular del Departamento de Ingeniería y luego de 1995, el director de ese Departamento, Franklin Domínguez, le ofreció la plaza de Supervisor.[2]

Franklin Domínguez evaluaba al apelante todos los años y su desempeño era muy bueno, al punto en que en varias ocasiones el apelante fue reconocido como empleado del año.[3]

Para marzo de 2020, antes de comenzar la pandemia del COVID, el departamento de ingeniería tenía 26 empleados, incluyendo al director Franklin Domínguez, el asistente Nicolás Lebrón, una secretaria, los supervisores y el mánager Edgardo Nieves.[4]

El 30 de marzo de 2020, la Gobernadora de Puerto Rico emitió una orden ejecutiva mediante la cual impuso una

---

[1] Admitido por la apelada, Apéndice 2, pág. 5.
[2] Apéndice 4, página 476, líneas 4 a la 16.
[3] Apéndice 4, página 488, línea 11 a la página 489, línea 1.
[4] Apéndice 4, página 478, líneas 3 a la 15.

cuarentena de 14 días a todos los viajeros que llegaban a Puerto Rico. Para personas que se hospedarían en un hotel, el lugar de la cuarentena era la habitación del hotel y no se permitía el uso de áreas comunes del hotel.[5]

Al principio hubo un Lay-Off de todos los empleados y solo asistían al Departamento de Ingeniería Franklin Domínguez y Nicolás Lebrón.[6] Luego a la semana o a las dos semanas, el hotel comenzó a operar parcialmente y en el Departamento de Ingeniería, además del director Franklin Domínguez y el asistente del director, Nicolás Lebrón, había otros empleados, ni la secretaria ni los supervisores estaban.[7]

Se empezó poco a poco, la operación comenzó a crecer poco a poco y se empezaron a traer empleados. No a todos, pero algunos empleados.[8]

La última posición del apelante fue como Supervisor del Área de Ingeniería de la apelada. La apelada admitió este hecho y clarificó que el nombre de la posición del apelante era Engineering Supervisor.[9]

Al momento del despido, Reyes Orta contaba con cincuenta y nueve (59) años de edad y era uno de los empleados con más edad y antigüedad de la apelada. La apelada admitió que la fecha de nacimiento del apelante era el 18 de mayo de 1961.[10]

El salario básico más alto devengado por Reyes Orta durante su empleo fue de $748.00 dólares semanales, equivalentes a $3,241.33 dólares mensuales y $38,896.00

---

[5] Hecho 12 de la Solicitud de Sentencia Sumaria, aceptado por el apelante; Apéndice 4, pág. 187.
[6] Apéndice 4, página 481 líneas 11 a la 20.
[7] Apéndice 4, página 486, línea 24 a la página 487, línea 9.
[8] Apéndice 4, página 487, líneas 18 a la 23.
[9] Apéndice 2, pág. 6.
[10] Apéndice 2, pág. 6.

dólares anuales sin contar beneficios marginales susceptibles de cómputo monetario. Aunque la apelada negó esta alegación y aseveró que el salario por hora del apelante era $18.70 la hora, no presentó en sus alegaciones los cómputos de dicho salario por semana, mes y año.[11]   El apelante fue despedido el 4 de diciembre de 2020.[12]

La Gerente del Departamento de Finanzas, María Victoria Fernández Bajo y la Gerente General de la Apelada, Sharilyn Toko, tomaron la determinación de despido del apelante con el asesoramiento de la Gerente de Recursos Humanos Maleny Collazo Vidot.[13]

Aunque la gerente de Recursos Humanos, Maleny Collazo, declaró que la gerencia de la apelada llevó a cabo algún tipo de estudio, plan, diseño, para analizar la situación antes de tomar decisiones, más adelante en su deposición manifestó que la gerencia de Hilton Worldwide envió un modelo que debía utilizarse en todas sus dependencias alrededor del mundo, en el cual se analizaba la operación y en base a la ocupación se tomaban decisiones.[14] No se presentó el detalle en un documento que justificara la eliminación de la plaza del apelante muy cerca de crear una nueva plaza, con funciones similares al apelante y para la que reclutaron una persona más joven.

Dicho documento[15] era un documento financiero, que no le fue enviado a ella sino a la directora de finanzas, quien lo compartió con ella.[16]

---

[11] Apéndice 2, pág. 6.
[12] Hecho alegado por ambas partes.
[13] Apéndice 4, página 422 a la página 423, línea 19.
[14] Apéndice 4, página 424, líneas 2 a la 12.
[15] Dicho documento no fue producido ni forma parte de los documentos que unió la apelada a su solicitud de sentencia sumaria.
[16] Apéndice 4, página 424, líneas 15 a la 21.

La explicación dada por Melany Collazo sobre el objeto de análisis del documento enviado a todas las propiedades de Hilton en el mundo es del todo vaga, puesto que se limitó a decir que el documento tenía unos renglones, unas guías, unas secciones para explicar cómo se afectaba, cosas específicas de Puerto Rico, cosas regionales que pudieran afectar aquí a Puerto Rico. Incluyendo leyes laborales, por ejemplo, cuál sería su efecto, si alguno, la ocupación. Pero se enfocaba mayormente en lo que era la operación. Básicamente, a lo que eso se refiere es a cuántas personas, dependiendo del nivel de ocupación que hubiese en el Hotel, cuántas personas se necesitaban para realizar las funciones del departamento.[17]

El documento a que se refiere Maleny Collazo fue utilizado, según declaró, para las determinaciones de Lay-Off o cesantías temporeras. Con relación al particular, declaró Maleny Collazo, lo siguiente: "Correcto. Una vez entra la pandemia, que empiezan las órdenes ejecutivas, que sin duda afectaron a todo Puerto Rico, particularmente nuestra industria, que no se podían llegar los cruceros, no había uso de piscina, no había uso de gimnasio, el distanciamiento, todas estas pruebas que se le requerían a los huéspedes, eso contribuyó a una disminución significativa en lo que era la ocupación y que los huéspedes quisieran venir y hasta los locales quedarse en nuestros hoteles. Y de acuerdo con eso, se analiza. Y el paso primero, una vez salen de (SIC) las primeras órdenes ejecutivas, que incluye un toque de queda y que las personas debían... el "lockdown", que tenían que quedarse en su casa, pues se implementa un "lay-off", que es una cesantía temporera."[18]

---

[17] Apéndice 4, página 425, líneas 7 a la 22.
[18] Apéndice 4, página 426, líneas 6 a la 19.

Continuó diciendo:

"Esas determinaciones no están por escrito, salvo cuando se notifica a los miembros de equipo, verdad, se les envía una notificación a las personas impactadas para propósitos, verdad, de que tuvieran conocimiento, la razón por la cual se les estaba cesanteando temporeramente."[19]

Las reuniones del grupo de trabajo compuesto por la gerente general, la gerente de finanzas y Maleny Collazo no fueron documentadas y no necesariamente hubo correos electrónicos sobre el particular.[20]

Aunque el documento, y el objeto del análisis, según Maleny Collazo se enfocaba mayormente en lo que era la operación, lo cierto es que dicho grupo de trabajo no se reunió con ningún gerente de departamento que no fuera la de finanzas, salvo cuando se tomó la decisión del Lay-Off que dijo que se reunieron con los directores de departamentos para saber su insumo con relación a su operación.[21]

Distinto a las reuniones con los directores de departamento para tomar decisiones en relación con los Lay-Off, en relación con los despidos a los directores meramente se les notificó la decisión de los despidos en su departamento, pero ellos no tomaron parte de la decisión.[22]

Según Maleny Collazo, en relación con la eliminación de puestos se evaluaron cuáles eran las diferentes clasificaciones y la necesidad operacional, para determinar a qué personas le correspondería y se evalúa el nombre, el tiempo que lleva la

---

[19] Apéndice 4, página 426, líneas 20 a la 25.
[20] Apéndice 4, página 427, líneas 18 a la página 428, línea 13.
[21] Apéndice 4, página 425, líneas 7 a la 22; y página 430, línea 22 a la página 432, línea 1.
[22] Apéndice 4, página 432, líneas 5 a la 9.

persona en el puesto, para propósitos de antigüedad, si es que hay que eliminarla por antigüedad.[23]

Según Maleny Collazo, si se va a eliminar la plaza, se evalúa el salario, para propósitos de que si le tocase a la persona algún tipo de "severance" que ofreciese el Hotel. Se evalúa la edad de la persona y también se evalúan las funciones que ejerce el empleado, porque obviamente no es seleccionar un puesto por el título solamente, sino se evalúa qué es lo que hace o cómo contribuye a la operación.[24]

Aunque el objeto del análisis, según Maleny Collazo se enfocaba mayormente en lo que era la operación y para fines del despido o eliminación de la plaza se evalúa qué es lo que hace el empleado o cómo contribuye a la operación, lo cierto es que en la práctica la persona que más podía aportar a ese análisis, el director de Ingeniería, Franklin Domínguez, no fue consultado para fines de la eliminación de la plaza del supervisor de ingeniería ni del despido del apelante.[25]

Desde antes de su despido (en el Lay-Off) y tras su despido, las funciones de supervisión que realizaban el apelante y Nelson (el otro supervisor), fueron distribuidas entre Nicolás y Nieves.[26]

Poco después del despido del apelante, allá para principios de 2021, la apelada reclutó a Frankie Vélez como mánager de ingeniería y a José Rodríguez Iglesias como mánager de infraestructura e ingeniería. Franklin Domínguez los reclutó porque según declaró, éstos aplicaron [solicitaron].[27]    Al momento de ser reclutado, Frankie Vélez era ingeniero

---

[23] Apéndice 4, página 432, línea 25 a la página 433, línea 12.
[24] Apéndice 4, página 433, línea 14 a la página 434, línea 9.
[25] Apéndice 4, página 425, líneas 7 a la 22; y página 497, línea 9 a la página 498, línea 1.
[26] Apéndice 4, página 489, líneas 2 a la 6.
[27] Apéndice 4, página 490, línea 6 a la página 493 línea 2; páginas 509-512.

mecánico.[28] Aunque no puede precisar la edad de Frankie Vélez, si 40, 42 0 46 años, Franklin Domínguez declaró que a su juicio éste es menor que el apelante Orlando Reyes.[29] Según declaró Franklin Domínguez, José Rodríguez tenía un grado en ingeniería.[30]

A la pregunta de ¿Y quién tenía más dominio de esas funciones, usted o esas personas, Frankie Vélez y José Rodríguez? Domínguez contestó: Bueno, yo fui director de ingeniería. Y de director de ingeniería yo tenía más experiencia que ellos dos.[31] Domínguez nunca completó un título de ingeniería.[32]

La asistencia del apelante, así como su conducta y ejecución eran muy buenas.[33] A la pregunta de ¿Y por qué si Orlando Reyes tenía 25 años, con excelente asistencia, conducta y excelente ejecución, no fue considerado para ser reclutado nuevamente y fue considerado José Rodríguez y Frankie Vélez?, Domínguez contestó: Bueno, no tengo la respuesta, no solicitó a la Plaza.[34]

En las posiciones de managers ocupadas por Frankie Vélez y José Rodríguez había que realizar parte de las funciones que realizaban los supervisores como el apelante y preparar informes.[35] Se trata de informes diarios sobre energía, pagos a los empleados, gastos mensuales y gastos diarios a base de una data que tiene la empresa.[36]

Tanto el señor Frankie Vélez como el señor José Rodríguez fueron adiestrados por Domínguez para hacer esos informes una

---

[28] Apéndice 4, página 492, línea 6 a la página 493 líneas 4 a la 5.
[29] Apéndice 4, página 493, líneas 3 a la 9.
[30] Apéndice 4, página 493, líneas 21 a la 23.
[31] Apéndice 4, página 493, línea 24 a la página 494, línea 15.
[32] Apéndice 4, página 494, líneas 16 a la 18.
[33] Apéndice 4, página 494, líneas 21 a la 25.
[34] Apéndice 4, página 495, líneas 1 a la 6.
[35] Apéndice 4, página 495, línea 22 a la página 496, línea 4.
[36] Apéndice 4, página 496, líneas 8 a la 16.

vez fueron reclutados dentro de los seis meses siguientes al despido del apelante.[37] **Domínguez admitió en su deposición que él pudo haber adiestrado al apelante para preparar esos informes.[38]**

Dentro de los seis (6) meses siguientes al despido del apelante, la apelada no solo contrató a un mánager de ingeniería (Frankie Vélez) para que realizara las funciones del apelante y la de rendir informes para la que fue adiestrado, al igual que pudo haber sido adiestrado el apelante, sino que 'también contrató a otros dos (2) empleados para hacer funciones de mantenimiento en el departamento de ingeniería que realizaba el apelante. Estos empleados son Gerardo Díaz y Mario Francis, de los cuales estamos convencidos que tenían menos experiencia que el apelante trabajando en la apelada.[39] Domínguez dejó de trabajar para el hotel en mayo de 2022.[40]

El saldo neto de la alegada reorganización fue el despido del apelante, empleado de mayor antigüedad en el área de ingeniería y uno de los de mayor edad en la empresa. Aunque la apelada manifestó que se eliminaba la posición del apelante por razón de la pandemia, lo cierto es que, la apelada continuó operando con poco personal y las funciones que realizaba el apelante continuaron realizándose por personal de reciente reclutamiento.

El TPI solo tuvo ante sí una solicitud de que se desestimara el caso al amparo de la Regla 36 de las de Procedimiento Civil, la que recoge el mandato de cómo proceder ante peticiones de resolver sumariamente una controversia.

---

[37] Apéndice 4, página 496, línea 22 a la página 497, línea 8.
[38] Apéndice 4, página 496, líneas 5 a la 7.
[39] Apéndice 4, páginas 513-516.
[40] Apéndice 4, página 498, líneas 21 a la 23.

La sentencia sumaria es un mecanismo procesal que permite resolver de forma acelerada controversias en las cuales no se requiere la celebración de un juicio por no existir controversias de hechos materiales reales y sustanciales. *Pérez v. Univisión*, 178 DPR 200 (2010). La Regla 36 de las de Procedimiento Civil, 32 LPRA Ap. V, rige el proceso mediante el cual, cualquiera de las partes en un pleito puede solicitar al tribunal que dicte sentencia sumaria a su favor. La parte que interese utilizar este mecanismo deberá demostrar en su solicitud "la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación." 32 LPRA Ap. V R. 36.1, 36.2. Por tanto, independientemente de la parte promovente de la solicitud, la sentencia sumaria "puede dictarse a favor o en contra del promovente, según proceda en derecho." *Audiovisual Lang v. Sist. Est. Natal Hnos*, 144 DPR 563, 575 (1997).

El criterio rector para adjudicar una solicitud de sentencia sumaria, al momento de tomarla en consideración, recae en que "no haya controversia sobre los hechos esenciales y pertinentes, según alegados por las partes en sus respectivas solicitudes y/o oposiciones, y que solo reste aplicar el derecho." *Rodríguez García v. UCA*, 200 DPR 929 (2018). Véase, además, *Velázquez Ortiz v. Mun. de Humacao*, 197 DPR 656, 661 (2017). Una vez el tribunal determine que no existen controversias de hechos reales materiales y pertinentes, el tribunal deberá aplicar y resolver conforme a Derecho. *Rodríguez García v. Universidad Carlos Albizu, Inc.*, supra. El tribunal procederá a dictar sentencia sumaria solamente cuando esté convencido de que no existe controversia sobre cualquier hecho material, real y pertinente, en

la controversia ante sí. *Nissen Holland v. Genthaller*, 172 DPR 503 (2007). A tales efectos, cabe resaltar que "la regla no excluye tipos de casos y realmente puede funcionar en cualquier contexto sustantivo." *Pérez v. Univisión*, supra. Por tanto, no importa la complejidad de un pleito si de la moción, así como de su oposición, resulta que no existe controversia real en cuanto a los hechos materiales del caso. *Meléndez González v. M. Cuebas, Inc. et als.*,193 DPR 100, 112 (2015).

Por otro lado, en *Meléndez González v. M. Cuebas, Inc. et. als.*, supra, el Tribunal Supremo estableció la norma relacionada al estándar de revisión del Tribunal de Apelaciones en torno a la denegación o concesión de una solicitud de sentencia sumaria. En esa ocasión, el Tribunal Supremo reiteró que el Tribunal de Apelaciones se encuentra en la misma posición que el foro primario al momento de revisar una solicitud de sentencia sumaria, por lo que el foro apelativo deberá regirse por las disposiciones de la Regla 36 de Procedimiento Civil, supra, y su jurisprudencia. A su vez, esta norma limita al foro apelativo a considerar solamente aquellos documentos que fueron presentados ante el foro de primera instancia y, además, a determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho fue aplicado correctamente. *Meléndez González v. M. Cuebas, Inc. et. als.*, supra, pág. 118. A tales efectos, aun cuando la revisión del Tribunal de Apelaciones es de novo, es el foro primario quién conserva la tarea de adjudicar los hechos materiales en controversia, luego de celebrado un juicio en su fondo.

Asimismo, el foro apelativo deberá revisar si en realidad existen hechos materiales en controversia y, de existir, la jurisprudencia exige que cumpla con las exigencias de la Regla

36.4 de Procedimiento Civil, supra. Además, deberá exponer detalladamente cuales hechos materiales encontró que están en controversia y cuales resultaron incontrovertidos. Por último, si el foro apelativo encuentra que efectivamente los hechos están incontrovertidos, deberá entonces revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. Íd.

Al momento de enfrentarse con una solicitud de sentencia sumaria, el tribunal deberá presumir como ciertos los hechos no controvertidos que surjan de los documentos que acompañan la solicitud. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881 (1994). En su examen, el foro primario analiza los documentos que acompañan la moción que solicita la sentencia sumaria y los documentos incluidos con la moción en oposición, y aquellos que obren en el expediente del tribunal; y determina si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. *S.L.G. v. S.L.G.*, 150 DPR 171 (2000). **Se abstendrá de dictar sentencia sumaria cuando: (1) existan hechos materiales controvertidos; (2) existan alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material, o (4) como cuestión de derecho no proceda.** *Íd.* Por igual, **un tribunal declarará sin lugar una solicitud de sentencia sumaria cuando haya elementos subjetivos o de credibilidad y estos constituyan un factor esencial en la resolución de la controversia presentada.** *Abrams Rivera v. E.L.A.*, 178 DPR 914 (2010); *Carpets & Rugs v. Tropical Reps.*, 175 DPR 615 (2009). Del mismo modo, dado que

una moción de sentencia sumaria ejerce un efecto importante en el litigio, independientemente del modo en que sea adjudicada por el foro de primera instancia, precisa que dicho foro sea el que determine "los hechos que han quedado incontrovertidos y aquellos que aún están en controversia". *Meléndez González et al. v. M. Cuebas, Inc.*, 193 DPR 100 (2015). Énfasis suplido.

Como indicamos, nuestro examen está limitado a la consideración de la evidencia que las partes presentaron ante el foro de primera instancia. Debemos revisar que los escritos cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra*. Además, examinamos si en realidad existen hechos materiales en controversia. Así, si encontramos que los hechos materiales realmente están incontrovertidos, revisamos *de novo* si la primera instancia judicial aplicó correctamente el derecho a la controversia. *González Santiago v. Baxter Healthcare of Puerto Rico, supra*; *Meléndez González et al. v. M. Cuebas, supra*.

Los únicos hechos no controvertidos para este Juez son la edad del apelante, el tiempo que estuvo el apelante en la empresa en la empresa y el hecho de que ocurrió un despido al apelante y la fecha de dicho despido, todo lo demás quedó en controversia al evaluar los documentos que evaluó el TPI.

Está en controversia si en efecto ocurrió un plan de reorganización en la empresa. Si fue consultado el Gerente de Ingeniería, supervisor inmediato del apelante al momento del despido y parece que no se le consultó a este el despido de uno de los empleados más antiguos del Departamento de Ingeniería del Hotel. Está en controversia la necesidad de crear puestos nuevos, para darle a estos nuevos empleados parte de las funciones del apelante y a pesar de eso reclutaron dos personas,

que por lo menos uno de los cuales era mucho más joven que el apelante y el patrono demandado no reveló la edad, ni las funciones específicas de los nuevos empleados. Con esos hechos en controversia no procedía la sentencia sumaria que dictó el TPI y por ello respetuosamente disiento.

Eric R. Ronda Del Toro
Juez de Apelaciones